UNITED STATES BANKRUPTCY COURT      **FOR PUBLICATION**
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
IN RE

NEW ROCHELLE TELEPHONE CORP.,      CASE NO. 8-08-75221-ast
      CHAPTER 11

                    DEBTOR.
---------------------------------------------------------X

**APPEARANCES:**

Salvatore LaMonica, Esq.
Adam Wofse, Esq.
Jacqulyn S. Giunta, Esq.
LaMonica Herbst & Maniscalco, LLP
3305 Jerusalem Avenue
Wantagh, New York 11793

Darryl S. Laddin , Esq.
Frank N. White, Esq.
Arnall Golden Gregory LLP
171 17th Street N.W. - Suite 2100
Atlanta, Georgia 30363

Terese A. Cavanagh
Office of the United States Trustee
560 Federal Plaza
Central Islip, New York 11722

John H. Drucker, Esq.
Cole Schotz Meisel Forman & Leonard PA
460 Park Avenue  - 8th Floor
New York, NY 10022

HON. ALAN S. TRUST, United States Bankruptcy Judge:

**MEMORANDUM OPINION ON ADEQUATE ASSURANCE AND CONVERSION**

## Introduction and issues before the Court

Before the Court are two motions which were procedurally consolidated for an evidentiary hearing on November 6, 2008 (the "Hearing").[1]  The first motion is a motion[2] filed by the Debtor, New Rochelle Telephone Corporation ("Debtor"), seeking, inter alia, to determine that, because Verizon (defined below) is a utility which entered into an executory contract with Debtor prior to bankruptcy, Verizon's rights and Debtor's obligations are governed by 11 U.S.C. § 365 and not § 366[3] (the "366 Motion").  [dkt item 28]  In the alternative, Debtor requests in the Motion that, if the payment of adequate assurance is required under § 366, this Court determine the proper amount of adequate assurance.[4]  The second motion is a motion[5] filed by Verizon seeking to convert this case from under chapter 11 to a case under chapter 7 (the "Conversion Motion"). [dkt item 31]

---

[1] The Court had also simultaneously conducted a final hearing on Debtor's Motion to Use Cash Collateral and for the Entry of an Order Authorizing the Debtor's Use of Cash Collateral and Collateral of Secured Creditor (the "Cash Collateral Motion"). [dkt item19] The Cash Collateral Motion is addressed by a separate Order and the findings of fact and conclusions of law made thereon on the record on November 10, 2008.

[2] Motion of Debtor for an Order Denying That Payment of Adequate Assurance Is Required and Lifting the Embargo Imposed by Verizon; or in the Alternative, Determining the Proper Amount of Adequate Assurance Pursuant to 11 U.S.C. § 366.

[3] Unless otherwise noted, references to Title 11 of the United States Code shall be the "Code" or the "Bankruptcy Code."

[4] Debtor also asks for relief "lifting the embargo imposed by Verizon." This request relates to a claim that Verizon is improperly denying Debtor's the right to add new customers and is denying Debtor the right to expand the services it can make available to its existing customers.  This opinion and the accompanying Order hereon do not expressly reach the issue of whether Verizon's embargo constitutes a violation of the stay.

[5] Motion of Verizon New York Inc., Verizon New Jersey Inc. and  Verizon Pennsylvania Inc. to Convert Chapter 11 Case to One Under Chapter 7.

## Findings of Fact and Conclusions of Law

The following findings of fact and conclusions of law, in addition to those stated on the record on November 10, 2008, at the conclusion of the Hearing, are made in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure and are incorporated herein by reference.

## Jurisdiction

This Court has jurisdiction over these core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (M) and (O), and 1334(b), and the Standing Order of Reference in effect in the Eastern District of New York.

## Procedural History

On September 23, 2008 (the "Petition Date"), the Debtor filed a voluntary petition for reorganization under Chapter 11 of Title 11 of the Bankruptcy Code. The Debtor has continued in the management of its affairs and the operation of its business and property as a Debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

Debtor's largest creditors by far are Verizon Services Corp., Verizon New York, Inc., Verizon New Jersey, Inc., Verizon Pennsylvania, Inc. (collectively, "Verizon"). Verizon is owed in excess of $3,000,000 as of the Petition Date. [Hrg. Ex. B, *Payment History Summary*, and K, *Debtor's Schedules*]

On October 16, 2008, Debtor filed the 366 Motion.  In its 366 Motion, Debtor concedes Verizon is a utility.  Verizon filed its initial objection thereto on October 21, 2008. [dkt item 41].

On October 16, 2008, Verizon filed the Conversion Motion.  Debtor filed its initial

objection thereto on October 21, 2008. [dkt item 40]

This Court began an evidentiary Hearing on the 366 Motion and held a status conference on the Conversion Motion on October 24, 2008.  In light of the shortened notice by which the 366 Motion came on for hearing, the Court expressly did not rule at that time on all of the issues now addressed in this Opinion.  Instead, this Court ordered, inter alia, that Debtor was to post a $75,000 deposit with Verizon by October 31, 2008, as a condition to Verizon continuing to provide post-petition services.  To date, Debtor has failed to comply with that Order.

In addition, in light of the evidence adduced at the October 24 hearing, as well as at the October 8 initial hearing on the Cash Collateral Motion, this Court consolidated the hearings for the 366 Motion, the Conversion Motion and the final hearing on the Cash Collateral Motion and scheduled all three for the Hearing on November 6, 2008. The Court also established procedural requirements for the consolidated Hearing. Thereafter, the parties filed substantial briefs, affirmations, and pre-trial submissions as directed by this Court. [dkt items 54, 55, 56, 57, 58, 59, 60, and 61]

## Pre-filing background

The pre-petition history is not in material dispute. Debtor is a telephone company that operates in a highly regulated environment. As of the Petition Date, Debtor provides services to approximately 3,000 residential and commercial customers in the New York, New Jersey, and Pennsylvania area. Debtor's operations include, but are not limited to, providing customers with dial tone for local, long distance and international calls, as well as broadband internet access and virtual private network services.  Debtor has two locations for business operations. One is located in Hauppauge, New York and the

other is located in White Plains, New York.

In or about January 2005, the Debtor entered into a Wholesale Advantage Services Agreement (the "Agreement") with Verizon. Pursuant to the Agreement, Verizon was to provide local switched dial tone services for Debtor to offer to its "end-user" customers.  Under the Agreement, Verizon provides services and facilities to Debtor on pricing and other terms that are not available to Verizon customers that do not enter into contracts such as the Agreement.

Verizon's monthly billing for services was, and is, based upon a number of factors, including the number of telephone lines, certain monthly recurring and non-recurring charges, usage, and surcharges.  The Agreement also provides that Debtor would receive discounts for the line charges based on certain volume levels.

### Regulatory environment

Debtor is a competitive local exchange carrier ("CLEC"), which is a telephone corporation that is a "local exchange carrier" as defined by 47 U.S.C. § 153(26).  Debtor provides resale service of services obtained from Verizon, pursuant to 47 U.S.C. § 251(c)(4).  At the federal level, Debtor is regulated by the Federal Communications Commission (the "FCC").  Under federal law, Debtor is required to give a minimum of thirty (30) days written notice to its end-user customers advising those customers that Debtor intends to discontinue service. See 47 C.F.R. § 63.71 (2008).

Verizon is an "incumbent local exchange carrier" as defined at 47 U.S.C. § 251(h) (2008).  As such, Verizon is required to post tariffs regarding the rates it charges for various services.

Debtor is also subject to regulatory authority at the state level.  The New York

State Public Utility Commission (the "NYPUC") is charged with regulatory oversight of telephone corporations that own, operate or manage facilities utilized to provide telephone service for hire within the State of New York. See N.Y. PUBLIC SERVICE LAW §§ 2(17, 18), 4(1), 5(1)(d).  The NYPUC has stated in this case that it requires Debtor give at least sixty (60) days notice to customers before their service is discontinued. See Response of the NYPUC to the Conversion, and New York Public Service Commission, Order Adopting Revised Mass Migration Guidelines, Case 00-C-0188 (January 2, 2003). [dkt item 48]

Similarly, the New Jersey Board of Public Utilities is charged with regulatory oversight of telephone corporations that own, operate or manage facilities utilized to provide telephone service for hire within the State of New Jersey ("NJPUC").  The NJPUC requires a withdrawing carrier to provide sixty (60) days written notice to affected end-user customers before any service is discontinued. See N.J.A.C. N.J. STAT. ANN. § 14:10-12.5.  Similarly, the Pennsylvania Public Utility Commission ("PPUC") requires at least thirty (30) days of advance notice to end-users before a carrier discontinues service. See 52 PA. STAT. ANN. § 63.306(e)1.

The expressed purpose of each of these states' notice requirements is to give a withdrawing carrier's customers a reasonable opportunity to obtain telecommunications service from another provider before that customer's service is discontinued.

The PPUC had issued an Opinion and Order on July 1, 2008, which, inter alia, directed Debtor to cease and desist acquiring any new customers in Pennsylvania, and directed Debtor to provide written notice by July 11, 2008, to its existing customers that the PPUC intended to cancel its "certificate of public convenience." [Hrg. Ex. M, *PPUC*

*Order*]  Otherwise stated, Debtor's authority to operate in Pennsylvania had been terminated.[6]

### Pre-petition dealings and litigation between Debtor and Verizon

Debtor was acquired in June 2007, in a transaction involving another entity owned or controlled by Mr. Chatpar known as Cyber Digital, Inc. Starting in December 2007, through the Petition Date, made no payments to Verizon, while incurring a debt to Verizon in excess of $3,000,000.  Debtor failed to provide any credible explanation for this failure to pay any of these debts to Verizon.  In the summer of 2008, and in accordance with the Agreement, Verizon curtailed the services available to Debtor under the Agreement.  Debtor refers to this reduction of service as an "embargo."  Verizon also provided Debtor with notice that it intended to terminate all service to Debtor. [dkt item 58, ex. C, D]

In reaction thereto, Debtor commenced an action in New York state court, styled New Rochelle Telephone Corp. v. Verizon Services Corp., *et al.*, Supreme Court of the State of New York, County of Suffolk; Index No. 08-30259. In that case, Debtor disputed its unpaid Verizon charges and sought to obtain an injunction preventing Verizon from terminating service for non-payment.  After a two-day evidentiary hearing held on September 18 and 19, 2008, the state court refused to enjoin Verizon from terminating service.  This bankruptcy filing followed shortly thereafter.

### Debtor's pre-petition operations and its bankruptcy creditors

---

[6] The PPUC litigation or administrative proceeding is not disclosed in Debtor's Statement of Financial Affairs (Hrg. Ex. K).

A primary measure of Debtor's business operations is its average line count. Between January 2006 and July 2008, Debtor's line count dropped from approximately 12,000 to approximately 5,800, a drop of over 50%. [Hrg. Ex. L, *Chart*] In addition, between Cyber Digital's acquisition of Debtor in June 2007 and July 2008, Debtor's line count dropped from approximately 9,000 to approximately 5,800, a drop of over 33%. [Hrg. Ex. 8, *Line Count Summary*]

As noted, as of the Petition Date, Debtor owed Verizon in excess of $3,000,000. Debtor also scheduled a secured debt to Laurus Master Fund, Ltd. of $900,000, secured by assets purportedly worth $1,288,344. [Hrg. Ex. K, *Schedules*] Included within this alleged collateral are Debtor's 3,000 customer accounts, which Debtor valued at $1,000,000.

Debtor and Verizon disagree over what the monthly charges are that Debtor currently incurs to Verizon.  Debtor alleges that amount is approximately $115,000, while Verizon alleges that amount is approximately $254,000 per month.  Verizon has billed Debtor post-petition for services between approximately October 7 and November 6, 2008 in the amount of $134,863.27.  [Hrg. Ex. EE, *Billing Summary*]  These charges, however, exclude approximately seventeen (17) days of usage charges and line volume shortfall charges which Verizon asserts accrued under the Agreement in an as yet undetermined amount, both for the same billing period.

**Discussion**

**Section 365 does not supplant Section 366, and Debtor
must provide Verizon with a cash deposit as adequate assurance**

Debtor argues that Section 366 does not apply in this case to Verizon because Verizon and Debtor are parties to an executory contract and, therefore, Verizon's rights and Debtor's obligations are governed solely by Section 365.  Debtor argues, in the alterative that, if Section 366 does apply, a deposit of fourteen (14) days of service, calculated by Debtor as $57,000, is an adequate amount for a deposit.  This Court rejects both of Debtor's arguments.

Section 366, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), added new protections for utilities.  See 3 COLLIER ON BANKRUPTCY ¶ 366.LH[2] (15th ed. Rev. 2008) (The 2005 amendments to section 366 "created new limits on the methods by which a chapter 11 debtor may provide adequate assurance and gave utilities greater rights in chapter 11 cases").[7]

Moreover, Section 366 is not ambiguous.  As such, this section must be enforced as written. See Hartford Underwriters Inc. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000) (courts are to enforce statutes by their plain meaning); Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194 (1985) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.").

Section 366(c)(2) of the Bankruptcy Code now provides that, in a Chapter 11

---

[7]For a thorough discussion of § 366, see Pan & Taylor, *Sustaining Power: Applying 11 U.S.C. § 366 in Chapter 11 Post-BAPCPA*, 22 EMORY BANKR. DEV. J. 371 (Spring 2006).

case, a utility "may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility." 11 U.S.C. § 366(c)(2).   "Assurance of payment" in a Chapter 11 case is now required to be in the form of a cash deposit, a letter of credit, a certificate of deposit, a surety bond, a prepayment of utility consumption, or another form of security that is mutually agreeable to the utility and the debtor. 11 U.S.C. § 366(c)(1)(A).  Bankruptcy courts are no longer permitted to grant the utility a lien as a form of assurance of payment. Further, Section 366(c)(1)(B) dictates that an administrative expense priority "shall not constitute an assurance of payment."  Furthermore, under Section 366(c)(3)(B), in determining the amount of deposit the debtor is to post, the court may not consider the absence of security before the date of the filing of the petition, the payment by the debtor of charges for utility service in a timely manner before the date of the filing of the petition, or the availability of an administrative expense priority.

In deciding what constitutes adequate assurance, a bankruptcy court must focus on the utility's need for assurance with the debtor's scarce financial resources.  See Virginia Elec. & Power Co. v. Caldor, Inc.-New York, 117 F.3d 646 (2d. Cir. 1997); In re Adelphia Bus. Solutions, 280 B.R. 63 (Bankr. S.D.N.Y. 2002).  Adequate assurance, however, is not a guarantee of payment; rather, it is intended to guard against the utility assuming an unreasonable risk of non-payment.  Adelphia, 280 B.R. at 80-82.

The bankruptcy court in In re Lucre, Inc., 333 B.R. 151 (Bankr. W.D. Mich., 2005), addressed Section 366 shortly after BAPCPA became effective.  Similar to the Debtor here, the debtor in Lucre was in the business of providing telecommunications services

to various customers in the western half of Michigan's lower peninsula.  Lucre purchased

long distance service from Sprint and purchased telecommunication services from IXC

Direct ("IXC") and  Opex Communications ("Opex"). However, the debtor itself did not

use these services. Rather, Lucre utilized IXC's and Opex's services in connection with

Lucre's provision of telecommunication services to its own customers.  Lucre also utilized

telecommunication services provided by SBC, Verizon and U.S. Signal in a similar

fashion. "Indeed, Debtor reciprocates in at least some of those arrangements by

providing telecommunication services in return. A document commonly referred to as an

interconnection agreement memorializes the arrangement to provide services between

Debtor and this type of telecommunication provider." Lucre, 333 B.R. at 153.

        The Lucre court noted that § 366(c)(1) limits what the Chapter 11 trustee or debtor

in possession may offer as "adequate assurance of payment," and more importantly, that

§ 366(c)(2) only permits the automatic injunction of  § 366(a) to continue beyond the

initial thirty (30) days of the case if the adequate assurance offered by the Chapter 11

trustee or debtor in possession is not satisfactory to the utility.  333 B.R. at 153-54. In

this case, Verizon has clearly rejected the Debtor's offer of a $57,000 deposit as

adequate assurance.

**Debtor must post a deposit with Verizon**

        Debtor must post a deposit with Verizon as adequate assurance under Section

366.  This Court finds no support in the Bankruptcy Code or the case law that allows this

Court to ignore Section 366 simply because Debtor and Verizon entered into the

Agreement.   In its papers, Verizon has cited a number of bench rulings by bankruptcy

courts requiring debtors to post deposits with Verizon and other telecommunication

service providers under Section 366.  However, no written decision appears to be directly on point on this issue.  To this Court, the statute is clear on its face.

So as not to be glossed over, on October 24, 2008, this Court ordered, <u>inter</u> <u>alia</u>, that Debtor was to post a $75,000 deposit with Verizon by October 31, 2008, as a condition to Verizon continuing to provide post-petition services.  Debtor failed to do so, and has failed to provide this Court with any meaningful reason for failing to either post the deposit or to seek relief from this Court's order directing it to file the deposit. Moreover, Debtor made no effort to post any deposit with Verizon.

Debtor has asserted two excuses. One, which is not at all credible, is the assertion that Verizon's embargo caused Debtor to be unable to post the deposit.  The second is that Debtor failed to collect a substantial receivable of $131,942.13 from the entity which sold Debtor to Mr. Chatpar.  However, Debtor had projected collecting this receivable in its post-petition budgets submitted to this Court and its creditors just days before the October 24, 2008 hearing.[8]  Debtor also represented to this Court at the October 24 hearing that it expected to have over $200,000 in cash by October 31, 2008.

Debtor has conceded Verizon is a utility and is providing utility services to Debtor.  Therefore, Verizon is entitled to the protections of Section 366.  Because Debtor is incurring at least $150,000 a month of post-petition charges from Verizon, Debtor is to post a $150,000 deposit.  Debtor must post the previously ordered deposit of $75,000 in cash or a cash equivalent with Verizon by 5:00 p.m. on November 13, 2008.  Debtor must post an additional deposit of $75,000 in cash or a cash equivalent with Verizon by

---

[8] The October 24, 2008, hearing was a preliminary hearing on the 366 Motion and an interim hearing on the Cash Collateral Motion.

5:00 p.m. on November 20, 2008.  This Court may increase or decrease the deposit as facts further develop in this case.  Specifically, but without limitation, if requested by Verizon, this Court will conduct a hearing on the issue of whether to increase the deposit to account for the alleged line volume shortfall charges arising under the Agreement.

### Conversion of this Chapter 11 case

Conversion is sought by Verizon under Section 1112(b), which provides in pertinent part as follows:

> [O]n request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, which ever is in the best interests of creditors and the estate, if the movant establishes cause.

11 U.S.C. § 1112(b)(1) (emphasis added).

Absent a showing of  "unusual circumstances," if the movant establishes that "cause" exists to convert the case, it is the Court's obligation to dismiss or convert a Chapter 11 case.  Moreover, under BAPCPA, a hearing on a motion to convert must commence within thirty (30) days after the motion is filed, and must be decided within fifteen (15) days after the hearing commences.  11 U.S.C. § 1112(b)(3).

Verizon asserts that cause exists here to justify conversion based on the following provision of Section 1112(b)(4): (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; and (M) inability to effectuate substantial consummation of a confirmed plan.  11 U.S.C. §§ 1112 (b)(4)(A) and (M). Verizon alleges that Debtor is operating at a substantial monthly loss and is unable to meet the regular expenses payable to its most critical suppliers, that its cash

on hand is "woefully insufficient to meet even its initial obligations as a Chapter 11 debtor under section 366 of the Bankruptcy Code, and thus its Chapter 11 estate is administratively insolvent...."

In response, Debtor asserts that "the Debtor is cash flow positive after payment of its monthly bills," that the Conversion Motion is premature, and that the primary reason it is not more profitable is because of Verizon's embargo.  The Court has previously rejected the argument that the embargo is causing Debtor's financial distress.

Both sides agree this Court has discretion to convert or not convert this case. See In re 1031 Tax Group, LLC, 374 B.R. 78 (Bankr. S.D.N.Y. 2007); In re State St. Assoc's., L.P., 348 B.R. 627, 638-39 n.24 (Bankr. N.D.N.Y. 2006).  In the exercise of that discretion, this Court notes that Debtor's "exit strategy" is to stay afloat in Chapter 11 long enough to find a buyer for its customer base.  Debtor asserts in its papers that it "is already in negotiations with potential buyers of the telephone services lines, [and] there is no basis in which Verizon can argue that there is not a reasonable likelihood of rehabilitation."[9]  Also, Debtor asserts that it believes it can obtain "firm bids from potential buyers" by December 5, 2008, and that it could migrate its customers from Verizon's lines in sixty (60) to ninety (90) days.  Debtor also asserts that it could realize "$1.2 to $1.8 million from the sale of its properties," in spite of assigning only a $1,000,000 value to its customers in its Schedules.

This Court is troubled by the continued fluctuations of Debtor's post-petition budgets; its failure to collect a substantial receivable; its systematic and continued loss of

---

[9]Mr. Chatpar's testimony at the hearing was not consistent with this plead assertion as to when Debtor began negotiations with potential buyers.

customers prior to the Petition Date; and its apparent decision to simply stop paying Verizon since December of 2007.  However, so long as Debtor posts the deposits ordered to be posted herein, and keeps current on a post-petition basis with Verizon and all of its post-petition vendors and suppliers, and its non-insider employees, this Court will exercise its discretion not to convert this case at this time, and will allow the Debtor until December 5, 2008, to obtain firm offers from potential buyers.

This Court will immediately enter an Order of conversion if any of the following events occurs:

1.  Debtor does not post the deposit of $75,000 in cash or a cash equivalent with Verizon by 5:00 p.m. on November 13, 2008.; or

2.  Debtor does not post the additional deposit of $75,000 in cash or a cash equivalent with Verizon by 5:00 p.m. on November 20, 2008.; or

3.  Debtor fails to pay, in full and on time (meaning the due date of any invoice), any of its post-petition vendors and suppliers, and its non-insider employees; or

4.  Debtor fails to obtain any written, bona fide firm offers from bona fide potential buyers by December 5, 2008.

With respect to events 1 and 2, if Debtor fails to comply, then the Court will immediately enter an Order of conversion following receipt of an affirmation of non-compliance filed by Verizon and served upon the Debtor, Debtor's Attorney, the United States Trustee, counsel for Laurus, and all parties who have filed notices of appearance in this case.  Service of such affirmation on Debtor's attorney shall be by e-mail or telecopy.  Any challenge to an affirmation of non-compliance shall be brought by counter-affidavit and must be filed with the Court and served on Verizon within two (2)

business days after the date of service of the affirmation of non-compliance.  Any such challenge shall be limited to the defense that the deposits have, in fact, been posted. The counter-affidavit shall be accompanied by evidence of such payments.  In such event, the Court will schedule a hearing on an expedited basis.

With respect to events 3 and 4, the Court has scheduled a further hearing on the Conversion Motion, as well as a status conference under Section 105(d), on December 10, 2008 at 10:00 a.m., to consider Debtor's compliance with conditions 3 and 4.

If this Court converts this case to Chapter 7, this Court will authorize the chapter 7 trustee to operate Debtor's business through any remainder of the sixty (60) day termination notice period required under federal, New York, New Jersey or Pennsylvania law.

## <u>Conclusion</u>

A separate Order consistent herewith shall issue.

Dated: November 13, 2008
        Central Islip, New York

                                              */s/ Alan S. Trust*
                                              Alan S. Trust
                                              United States Bankruptcy Judge